L. O. PORTER, Appellee, v. G. A. CARNEY, Appellant.

APPEAL AND ERROR: Assignments of Error—Sufficiency—Definiteness. The rule requiring that an alleged error should be specifically stated or pointed out is so that the court may have its attention directed to the very point on which the plaintiff relies, and if the record, as presented, be such as to accomplish that purpose, its form is not of vital moment.

**VENDOR AND PURCHASER:** Sale Contracts—Construction—Option—Purchase. The word "option" used in a written agreement for the sale of land, will be presumed to have been employed by the parties in the usual and proper meaning of the word, unless a contrary construction is made necessary, to avoid nullifying or defeating the express intention of the writing; and, where the purchaser bound himself to nothing beyond a nominal payment made, and had a period of 46 days within which he could complete a purchase, if he desired, but the vendor was bound to sell, the contract is construed to be an option, and not an agreement of agency.

**VENDOR AND PURCHASER:** Sale Contracts—Parol Evidence—Subsequent Oral Agreement. Assuming that an oral agreement is sufficient to change or vary the legal effect of a written contract of sale of land, in order to be provable it would have to have been made subsequent to the execution of the written contract.

**VENDOR AND PURCHASER:** Sale Contracts—Parol Evidence—Sufficiency of Evidence to Vary Written Agreement. Evidence reviewed, and held insufficient to show that a subsequent oral agreement modified a written option contract.

**BROKERS:** Compensation—Sale of Part of Tract at Less than Contract Price. One would not be entitled to recover a commission on an agreement for the sale of an entire tract of land, where he showed only an offer for the purchase of a part of the land at $50 an acre, which he declined, saying that it was listed at $55, even though such offer was communicated to his principal.

**BROKERS:** Compensation—Seller Not Compelled to Sell Part of Tract. Where a broker was to receive a commission upon the sale of all the land at an aggregate price of $55 per acre, the principal was not required to sell one part of the tract separately, and run the risk that the unsold parts might bring a figure to make up the required average, but the broker must have found a purchaser for all the land at prices sufficient to make the necessary average price.

**APPEAL AND ERROR:** Review—Issues—Veracity as to Oral Contract Not Affecting Written Contract. In an action upon a written contract involving the sale of land, an issue of veracity raised between the parties as to an oral agreement wholly independent of the writing will not be reviewed by the Supreme Court.

*Appeal from Butler District Court.*—C. H. KELLEY, Judge.
MAY 21, 1919.

ACTION at law to recover damages for alleged failure of the defendant to perform a certain written option contract for the sale of land. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*J. G. Mitchell, Martin & Turnipseed,* and *Courtwright & Arbuckle,* for appellant.

*Sager & Sweet,* for appellee.

WEAVER, J.—As the parties differ very widely upon the proper construction of the written contract, we quote it in full, as follows:

"Option

"This agreement, made this 15th day of November, 1912, between G. A. Carney and L. O. Porter, witnesseth: In consideration of $25.00 the receipt of which is hereby acknowledged the said G. A. Carney hereby agrees to convey by warranty deed the land described below, to said L. O. Porter or to any person, persons or corporation designated by said L. O. Porter until December 1, 1912, for the sum of $55.00 per acre, to be paid according to the following terms: $2,000.00 cash at the time the contract is made, of which $2,000.00 the above $25.00 shall be considered part payment, and all the balance with the exception of $8,000.00 in cash on March 1, 1913, when possession shall be given, and if desired by said L. O. Porter the said G. A. Carney agrees to take back mortgages on the land sold to the extent of $8,000.00 and which shall be apportioned among the various pieces of land sold so as not to exceed 50 per cent of the purchase price of the particular piece in any one case. Said mortgages to run for a period of five years with interest at the rate of 6 per cent per annum payable annually with the privilege of paying any multiple of $100.00 on any interest day. All payable at the Merchants National Bank, Greene, Iowa. The land covered by this option is situated

in Pittsford Township, Butler County, Iowa, and is more particularly described as follows, to wit: [Here follows description of 590 acres of land.] Said G. A. Carney agrees to furnish the said L. O. Porter, or anyone whom he may designate, an abstract of title showing a good title of record, on or before the first day of March, 1914, and to give the said L. O. Porter, or anyone whom he may designate, complete and peaceable possession of said premises on or before the 1st day of March, 1914. On December 1st, the said G. A. Carney agrees to extend this option until January 1st on further payment of $25.00. Said L. O. Porter agrees to pay 2 per cent interest on a mortgage now on said premises, from December 19, 1913, to March 1st, unless $10,000.00 shall be paid in on purchase price on this land prior to December 19th, 1913.

"[Signed] G. A. Carney.

"[Signed] L. O. Porter.

"The above agreement is hereby extended to July 1, 1913.

"Dated February 26, 1913.

"G. A. Carney,

"L. O. Porter.

"I hereby accept the erasures and changes of dates as above."

In his petition, plaintiff alleges that the intention and meaning of the parties in making the contract was to authorize plaintiff to sell any part of the lands therein described at figures above or below $55 per acre, provided that the sum received from the sale of the whole tract averaged $55 per acre or more, and that the contract was so construed by the parties by their mutual oral agreement after its execution. He then alleges "that, in reliance upon said written option," plaintiff performed work and labor and incurred expense to find purchasers for said lands, and did find buyers for all of it as follows: On June 1, 1913, to one

Meswarb, 350 acres at $65; on May 31, 1913, to Geo. Hargreaves, 80 acres at $60; on June 15, 1913, to W. Anderson, 80 acres at $50; on July 15, 1913, to P. Lieuwen, 80 acres at $50.

He further says that defendant conveyed the 350 acres to Meswarb, taking in part payment or exchange other land, and the remainder in money, of which he admits he himself received $520, but charges that defendant wrongfully refused to make conveyances to the other persons named, and he asks to recover an alleged remainder due to him under said agreement in the sum of $1,030.

A demurrer to the petition having been overruled, the defendant denied the petition, and, upon trial to a jury, the plaintiff recovered verdict for his entire demand.

I.   Appellee objects to the sufficiency of appellant's assignments of error because of their general and indefinite character.

It is possibly true that some of the assignments are open to the criticism made upon them, but we think there are enough of sufficiently specific character to permit a review of the decisive features in the merits of the case.

1. APPEAL AND ERROR: assignments of error: sufficiency: definiteness.

While the rule requiring that an alleged error shall be specifically stated or pointed out is one the propriety of which cannot be doubted, it is, nevertheless, a rule in the application of which courts and counsel may easily drift into technical extremes. The only purpose of the requirement is that the court may have its attention directed to the very point on which the appellant relies, and if the record as presented here be such as to accomplish that purpose, its form is not a matter of vital moment. If, for example, as in the case before us, counsel requests the court below for an instruction which embodies his theory upon a pertinent proposition of law, and the request is denied and exception preserved, we can see no good reason why counsel;

in assigning error thereon in this court, should be required to do more than point out the ruling of which he complains. The requested instruction contains and makes clear the proposition of law on which he relies, and to repeat it in the assignment of error is of no benefit. A glance at the instruction is all-sufficient to inform the court of the nature of the question presented, and this being done, the only legitimate end of the rule is attained. Again, if the defeated party moves for a new trial on the ground that the verdict is without support in the evidence, and his motion is denied, and on appeal he assigns error thereon in general terms, what more can he do? He cannot be expected to set out in his assignment all the evidence offered on the trial. Other illustrations will readily occur to the practicing lawyer. It is, of course, not sufficient to merely say, "The court erred in its rulings on evidence," or "The court erred in its instructions to the jury," or to make other indefinite objections which put upon the court the necessity of wading through the record in search of error. See Acts of the Thirtieth General Assembly, Chapter 126; *Dale v. Colfax Cons. Coal Co.*, 131 Iowa 67. Under our present rules, interpreted in the light of the statute, we think the assignments are sufficient to permit our consideration of the more vital questions which counsel have argued.

II. The plaintiff, in argument to this court, takes the position that the written contract is not an option to purchase, but an agreement of agency. In the language of his counsel:

2. VENDOR AND PURCHASER: sale contracts: construction: option: purchase.     "It is the contention of the appellee in this case that the contract in question is nothing more nor less than an agency contract, under the terms of which plaintiff was to receive as his commission all of the selling price over and above the sum of $55 an acre."

If that meaning is to be given the agreement, it must

be found in the written language; for neither party, plaintiff or defendant, or other witness testifies to any such agreement either before or after the writing was made. Conceding, as counsel argue, that the use of the word "option" does not alone or of itself control the legal effect of the writing, if, when taken as a whole, it is clear something else was intended; nevertheless, it being a word in common and general use, and being several times repeated in mentioning the character of the instrument, it will be presumed the parties employed the word in its usual and proper meaning, unless the contrary construction is made necessary to avoid nullifying or defeating the intent otherwise expressed in the writing. But the document will be searched in vain for any word or expression which indicates the creation of an agency, or of an employment to find or produce purchasers, or of an undertaking by the defendant to pay commissions on sales made by the plaintiff. The sole agreement and promise of the defendant is that, in consideration of $25 paid him by Porter, he will, at any time between that date and December 1st, a period of about 15 days, convey the entire 590 acres to Porter, or to any person or persons designated by him, for $55 per acre, to be paid in a certain described manner; and, upon further payment of $25, to extend the option to March 1st, an additional period of about 90 days. On the other hand, Porter bound himself to nothing. He did not promise or agree to buy. He acquired nothing except the right to buy within the time stipulated, if he should so elect, and perform the conditions. He could proceed to act upon the privilege for which he paid his $25, or he could neglect it. The opportunity was for him to improve or decline. He could abandon the venture, and incur no liability to the owner, either in law or in equity. In short, he bought a privilege to make the purchase at his election during the life of the agreement. Moreover, it was a right or privilege to purchase *all* the land, and not *part*

of it,—a privilege to purchase, and not the mere privilege to introduce purchasers. These terms exhibit all the essentials of an option. The defendant was bound to sell upon compliance with the conditions. The plaintiff was under no obligation to buy. *Pratt v. Prouty,* 104 Iowa 419, 420; *Myers v. Stone & Son,* 128 Iowa 10.

But, say counsel, if it be an option merely, then there is no reasonable explanation of the provision for payment of "$2,000 at the time contract is made," and this should be held to mean an agreement by defendant to make a contract with such persons as Carney might produce. But this construction is wholly unnecessary and unwarranted. The contract in suit was not a contract for sale, for it did not bind the plaintiff to buy. If he exercised his option, it could only be by his appearing within the time and becoming a party to a contract of purchase such as his option called for. When he should thus elect to enter into such contract of purchase, the payment of $2,000 became obligatory upon him, and not until then.

Further insistence is made that the provision for securing a part of the purchase price by mortgages proportioned to the land in such manner that the incumbrance on no tract should exceed 50 per cent of the purchase price of such tract, is reconcilable only with the theory of an agency, with right to sell the land for defendant in parcels. But this is clearly not the case. It is probably an allowable inference from the facts and the terms of the option that plaintiff was a real estate dealer, and that he took the option in the confidence or hope that, within the option period, he would be able to find purchasers to take it all, either in bulk or in parcels, on terms which would afford him a profit; and that defendant, as owner, preferred to deal with one man for the sale of the whole, rather than take the chances of finding a half dozen who would take it in broken parts. To meet this situation, he sold an option to plaintiff to pur-

chase the entire tract; but to facilitate plaintiff's effort to turn the property, he agreed to make the conveyance direct to plaintiff or to others whom plaintiff should designate. There is no difficulty in the case, if we keep it in mind that defendant's obligation to sell is to plaintiff alone, and not to the plaintiff's purchasers, and that his undertaking to execute deeds to others is only the agreed means or method of consummating the sale to plaintiff. The contract is not in the least ambiguous or uncertain, and requires no resort to extrinsic evidence to determine its meaning or legal effect. As we have seen, however, there was an effort to plead and prove an oral agreement of the parties to so construe the writing as to permit plaintiff to sell the land at any obtainable prices, provided the aggregate amount of such sales was sufficient to make an average of at least $55 per acre. On the assumption that such an agreement was sufficient to change or vary the legal effect of the writing, it is obvious that, to be provable, it must have been made subsequent to the execution of that instrument; and it is so alleged in the petition, but there is a distinct failure of proof to that effect. The sole testimony on the subject is given by the plaintiff himself, and, when led by his counsel to the vital point, and asked to state definitely whether the alleged oral agreement was prior or subsequent to the writing, his answer is:

3. VENDOR AND PURCHASER: sale contract: parol evidence: subsequent oral agreement.

4. VENDOR AND PURCHASER: sale contract: parol evidence: sufficiency of evidence to vary written agreement.

"Why, I would have to make a little explanation, possibly, if it is right: that is, it was about the time. It was the same evening that we made out the contract,—whether the contract had been signed at that time. But I don't think the contract was signed yet; but it might have been right after the contract was signed. But I can tell you why I know it, too."

Whether the witness's confusion is due to a failure of memory, or to an embarrassing uncertainty as to the effect of his answer, his statement is wholly insufficient to sustain a finding that any material change in the terms of the option was agreed upon after the writing was made. But more than this, even if we admit the truth and admissibility of his statement as to the conversation between the parties, it is in no manner inconsistent with the construction of the writing strictly as it is written. Plaintiff's story, briefly stated, is that, in answer to his question, defendant said it made no difference to him at what price plaintiff sold the land, so long as he (defendant) got the $55 an acre. And this was a correct statement of the rights of the parties under the contract as written. If plaintiff should exercise his option by paying or tendering payment for the land as therein provided, it would be wholly immaterial to the defendant whether plaintiff had sold it to others; or, if sold, whether he received more or less than $55 per acre.

The alleged cause of action pleaded by the plaintiff is expressly grounded upon the written contract. In his petition, he sets out the instrument in full, and declares that the service for which he demands a recovery was "performed in reliance on said written option." That said option was never exercised by performance of its conditions or by tender of performance by plaintiff is conceded, and there is no sound theory upon which a recovery of damages can be sustained. If the court can, by any known rule or canon of construction, change a clearly expressed written option to purchase land at an agreed price and upon given terms into a mere agency to sell, then it may also, by construction, convert an ordinary warranty deed into a lease for a term of years, or a formal promissory note into a contract for work and labor. No court has ever gone to the extent desired by plaintiff in this case, and it

is quite inconceivable that such a rule can anywhere find judicial favor.

III.   It is further to be said that, even on the theory advanced by the plaintiff and adopted by the trial court, plaintiff fails to show a right of recovery.   The plaintiff

testifies, in substance, to his understanding

5. BROKERS :
compensation :
sale of part
of tract at less
than contract
price.

that he was to receive his so-called commission or profit when all the land was sold by him, and the court charged the jury that "if, in fact, plaintiff did not procure purchasers for all the land as claimed by him," then he could recover nothing.   Had the jury observed and followed this instruction, the verdict would have been returned for defendant, for it is not shown that plaintiff did sell or procure purchasers for all the land.   To go no further than the alleged production of the man Anderson as a purchaser of an 80-acre tract, the record not only fails to support the claim, but negatives it.   Plaintiff's testimony concerning it is of a very rambling and inconsequent character.   After referring to some talk with Anderson early in the fall of 1912, —long before the option was granted,—he says:

"There was no positive offer the first time.   There was no offer at all the first time.   He didn't make me any offer then.   I had some further conversation with him.   I couldn't tell how many times,—probably a half dozen times between that and June at different times in regard to it. I don't remember that I had any conversation with Mr. Anderson after June, 1913.   There has probably been some conversation about it since June.   I do not remember a talk with Mr. Anderson any time about the Meswarb deal. I would not be sure of it right now, because I don't remember of it.   I talked to Mr. Carney about the offer I say Mr. Anderson made for this land.   I didn't speak to Carney at all about the first,—that is, the first conversation I didn't.   The first time I spoke to Mr. Carney about

Mr. Anderson's offer was when he offered to trade his 160, or his 80, I should say, for the 160. That was probably the first time. I won't be positive, but that was the first time. Anderson offered to make a trade there at one time. I asked Mr. Carney about it. He didn't want to trade at all. He didn't want the 80. I knew he wouldn't. There was another offer that Mr. Anderson made that I referred to Mr. Carney. He offered me $50 in cash. That was probably along the latter part of June,—somewhere along there. In 1913. I am not positive about the date. I told Mr. Carney that Anderson would give $50 an acre for the land,— the south 80. I am not positive whether at that time, but he said once it was worth $55. I know he claimed once it was worth $55, but I am not positive whether that was at that time or not."

Anderson himself, called as a witness by the plaintiff, states the story as follows:

"I recall having a conversation with Porter about the purchase of certain lands owned by Carney that Porter was trying to sell. I made an offer of $50 on 80 acres of that land. I was willing to take it at that price. * * * When I made that offer, Mr. Porter said he could not consider it. Said he had it listed at $55. * * * He told me he had to get $55 out of it."

A mere statement of the man's willingness to buy at $50, followed promptly by plaintiff's reply that such an offer could not be considered, is not sufficient to put the defendant in default on any theory of the case, even though the conversation was reported to him by plaintiff, which defendant denies. The testimony in regard to the negotiation, if any, with Hargreaves and Lieuwen is little, if any, more definite or satisfactory.

IV. So, too, if we assume, for the purposes of the appeal, that plaintiff might recover if he showed a sale of all the land at such aggregate price as to average $55 per acre,

it follows, of necessity, that defendant
could not be held to sell any one part or
tract separately, leaving other parts unsold,
and thereby take upon himself the risk of
being unable to sell such remnants for
enough to bring the average up to the contract standard.
To put upon defendant the obligation to sell under such
agreement, if made, plaintiff must have found a purchaser
or purchasers for all the land at prices to make up the
necessary average, and until then, an approval of the sales
could not be rightfully demanded; and such was the instruction given by the court. Now, according to his statement, plaintiff made the deal with Meswarb about June 1,
1913; while the three other alleged offers from Hargreaves,
Lieuwen, and Anderson were received on separate dates,
May 31st, June 15th, and July 15th. When the Hargreaves
offer was reported to defendant, the offers by Lieuwen and
Anderson had not yet been made, and defendant was under
no obligation to accept it, on any theory of the case, and
there is no evidence that, when the later offers, if any, were
received, the Hargreaves offer was still being held good; so
that on no theory discussed by counsel has a right of recovery been established.

V. We shall take no time to discuss the matter of the
deal with Meswarb, except to say that it is conceded that,
by some sort of agreement, tacit or expressed, 350 acres of
the land was withdrawn from the operation of plaintiff's option and put into an
exchange with Meswarb, the land taken in
exchange being conveyed to defendant. Defendant testifies that this was done under
an agreement by which he was to pay plaintiff $500 for his services in the deal, and that he paid it.
Plaintiff admits receiving the $500, but denies that he took
it as full compensation, and swears that defendant "was to

*6. BROKERS: compensation: seller not compelled to sell part of tract.*

*7. APPEAL AND ERROR: review: issues: veracity as to oral contract not affecting written contract.*

let me have that land at $65, with half the profit I could get above $65." Just what may be the truth of that contention is not here material. It is enough to say that this action is upon the written contract, and that the issue of veracity thus raised between the parties as witnesses has reference to some agreement wholly independent of the writing, and is not before us for decision.

For the reasons stated, the judgment of the district court must be, and it is,—*Reversed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.