JOHN GOMPERT, Appellee, v. MATT FROST, Appellant.

**VENDOR AND PURCHASER:** Contract of Sale (?) or Option (?)
1 Instrument analyzed, and, in connection with attending circumstances, held to constitute a contract of sale, even though uniformly designated as an *option.*

**CONTRACTS:** Practical Construction of Ambiguous Contract. The
2 practical construction placed by the parties on an ambiguous contract is persuasive on the issue of legal construction, and, in connection with the attending circumstances, may be quite controlling. So held on the question whether a writing was a *contract* of sale or a naked *option.*

**APPEAL AND ERROR:** Submitting Construction of Contract to
3 Jury. The erroneous submission to the jury of the *intent* of

the parties in entering into a writing is harmless, when the finding of the jury was precisely what the court must have found, as a matter of law, from the writing.

*Appeal from Waterloo Municipal Court.*—W. N. BIRDSALL, Judge.

APRIL 13, 1920.

ACTION at law to recover commission alleged to have been earned by the plaintiff in the sale of defendant's farm. There was a jury trial, and verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Mears & Lovejoy,* for appellant.

*Sager, Sweet & Edwards,* for appellee.

WEAVER, C. J.—The defendant, being the owner of a farm in Black Hawk County, listed it for sale with the plaintiff, a real estate dealer and agent, and agreed that, in the event of a sale procured by the agent,

1. VENDOR AND PURCHASER: contract of sale (?) or option (?)

he would pay a commission of $2.50 per acre. One Fobian applied to the plaintiff to obtain a lease of the farm, but was induced by plaintiff to consider the question of buying the property, instead of leasing it. Thereupon, plaintiff introduced Fobian to the defendant, as a prospective buyer. After some talk between them, defendant took Fobian to his house, exhibited the property to him, and the negotiations thus begun resulted in the execution of a written contract. The nature and effect of such contract, whether an agreement of sale or a mere option to Fobian to purchase in the future, are matters upon which counsel do not agree. On the theory that the contract was one of sale, plaintiff brings this action to recover the agreed commission. In his answer, the defendant admits no more than the listing of the land for sale with the plaintiff, and in all other respects denies the claim made against him.

The contract between defendant and Fobian is dated January 16, 1919, and provides in terms that the former gives and grants unto the latter "the option to purchase the farm [describing it] for the sum of $60,217.50 to be paid as follows: $2,217.50 cash in hand." Time for the expiration of the alleged option is not expressed, but a provision is inserted for its renewal on March 1, 1920, "by payment of $2,900 interest and $2,100 principal;" again, on March 21, 1921, "by payment of $2,795 interest and $2,205 principal;" and again, on March 1, 1922, "by payment of $2,684.75 interest and $2,315.25 principal;" and again, on March 21, 1923, "by payment of $2,568.98 interest and $2,431.02 principal."

The writing then further provides that, on March 1, 1924, Fobian "will pay to the party of the first part $48,-948.73 principal and $2,447.43 interest;" will pay all taxes assessed against the land for the year 1919 and subsequent years, and keep the buildings insured in the name of the defendant, "as his interest may appear." Fobian still further undertakes to bring upon the premises personal property free from incumbrance, to the value of $4,000, and to give defendant a chattel mortgage thereon, "to be used as part payment or security of the foregoing option." Provision is also made by which the option may be accepted and settlement made for the land at any time, and by which any sums paid for the consideration of the option or renewal thereof, except payments of interest, shall be deducted from the purchase price. The concluding clause of the agreement is as follows:

"When the purchase price has been fully paid as aforesaid, and the conditions of this contract fully performed, then the party of the first part agrees to convey said premises to the party of the second part by good and sufficient warranty deed conveying a good title clear of all incumbrance except taxes as stated."

Though nothing is expressly said as to the possession of the property, it satisfactorily appears from the record that an immediate delivery of the premises to Fobian was contemplated and made, and, so far as appears, Fobian is still in possession, carrying out the terms of the contract of sale.

I. Is this agreement, upon its face and as a matter of law, a contract for the sale of the land, or is it a mere option to Fobian to make such purchase, if he so elects? Appellant affirms the latter theory; while appellee contends that, if the agreement be not clearly and conclusively a contract of sale, it is of such ambiguous and uncertain character that the jury could properly find, under all the testimony, that it was so intended by the parties.

For the purposes of this case, it may be admitted at the outset that an agent for the sale of land, or for the production of a person ready, willing, and able to buy on the authorized terms, does not earn his commission by producing a customer who does no more than to take or obtain an option to buy. What, then, is the nature of this agreement, concerning the written terms of which there is no dispute? The writing in question is made to name or describe itself as an "option," but the name or label attached to an instrument does not always or necessarily determine the real nature or effect of its contents. An option for the purchase of land is a mere privilege or right which the owner confers upon another person to become, at his own election, the purchaser of the property, on stated terms, within a stated period of time. The holder of such an option is in no sense a purchaser. He acquires thereby no right, title, or interest, legal or equitable, in or to the land. He has no right of possession or control. He may, within the time agreed upon, utilize his privilege to buy, tender performance of the terms, and demand a conveyance; but this is a matter of his own choice, and he may permit the option to expire,

without incurring any liability therefor to the owner. *Hopwood v. McCausland,* 120 Iowa 218, 221; *Myers v. Stone & Son,* 128 Iowa 10, 12; *Sweezy v. Jones,* 65 Iowa 272.

Brought to the test of these principles, the contract in the case now under consideration is hardly open to reasonable doubt. It provides for much more than a right or privilege in Fobian, at his election, thereafter to be made, to buy the property at a given price. Taken as a whole, it clearly provides for the actual sale of the land for $60,217.50. Though not so stated in express words, it will be seen, by analysis of its terms, that it was treated as a sale, from the date of the instrument. A cash payment was to be made at that time; further yearly payment was to be made on each succeeding March for four years, together with yearly payments of interest. *Interest on what?* Not interest on the price of the option, surely, but the accruing interest on the entire, agreed price of the land. At the end of four years, the remainder of the purchase money was to become due. True, the cash payment and yearly installments, amounting to $5,000 annually, are described as payments for the option and its renewal; but it is further expressly agreed that all these payments shall, in settlement, be credited as payments upon the price of the land, and that, "when the purchase price has been fully paid, as aforesaid," deed of conveyance is to be made. The purchaser went into possession at once, not as a tenant, nor as a tenant with option to purchase, but as purchaser, and was required by the contract to further secure the seller by chattel mortgage on at least $4,000 worth of personalty. It is not necessary, for present purposes, to inquire or decide whether, upon failure of Fobian to pay one or more subsequently accruing installments, according to his contract, defendant could immediately dispossess him, or would be required to proceed by foreclosure, or other legal or equitable proceedings, to enforce the contract. It is to be noted, however, that the con-

tract places no price on the option to buy, as distinguished from the purchase price of the land, nor is any forfeiture of any kind provided for upon default in any of the payments. If, however, it be said that the use of the word "option" by the parties to the contract indicates or implies an agreement that such failure should work a forfeiture of Fobian's rights, such a holding would not serve to convert the contract into an option. It is, at most, simply the familiar contract of sale, with provision for forfeiture. A contract for sale of land may be so drawn as to be, to a degree, one of unilateral obligation,—that is, the selling price may be fixed, and made payable in successive installments, with an agreement that default made in an installment shall work a forfeiture of the purchaser's rights in the property, without further liability on his part, except the loss of payments already made; but such an agreement does not constitute an option, within the meaning of the law, nor is any such agreement here shown. The courts have quite often to deal with contracts for the sale of land ingeniously framed to pass muster as "options," sometimes for the apparent purpose of avoiding taxation for moneys and credits, and at other times to enable the seller to have the advantage of what is, in effect, a summary foreclosure of the purchaser's rights, without redemption, in case of his default; but such contracts, however effectual they may be in providing for forfeiture by purchasers, have no effect, we think, to transmute a contract of purchase and sale into a mere option, which, until acted upon and accepted, vests no right of property or right of action in anyone.

In this case, Fobian did not acquire simply a naked right to purchase, if he should so elect. His election was made at the very threshold of the transaction. He made a substantial payment down upon the purchase price. He acquired possession. He paid interest on the full, agreed price of the land, from the date of the agreement. He se-

cured further payment by chattel mortgage on his own property. He paid taxes and insurance. There was no price or consideration for the alleged option, except the agreed price of the land, and, under his contract, for every dollar paid by him to the defendant, he was entitled to credit on the contract price.

That the contract was intended as one for a sale of the property, we cannot doubt. Such being the case, the plaintiff having, by his agency, found and introduced the purchaser to the defendant, his right to the agreed commission was complete, subject only to the defendant's contention, if duly established, that payment of such commission was to be made in installments, as payments by Fobian of the price of the land should mature. Quite in point, upon the principal point here discussed, is *McGregor v. Ireland*, 86 Kans. 426 (121 Pac. 358).

II. There is another angle of view from which the same result may fairly be reached. If not, as we have held, clearly a contract of purchase, it is, to say the least, such a wide departure from the form and substance of a mere option that the practical construction placed upon the agreement by the parties themselves, together with the other circumstances already adverted to, may fairly be considered in ascertaining the intent with which the writing was made.

2. CONTRACTS: practical construction of ambiguous contract.

At a witness in his own behalf, the defendant quite uniformly speaks of his deal with Fobian as a "sale." He further says:

"I admit Mr. Gompert had the farm listed to find a purchaser for me. * * * I told him, if he would find a purchaser, I would pay him $2.50 an acre. I met Fobian through Mr. Gompert, and took him down to see the farm. * * * The disagreement between Gompert and myself

is that I do not think I should pay this, except as I get the money from Fobian. He agreed to take his percentage, and, if I get 100 per cent, he shall have 100 per cent."

Defendant's claim that plaintiff had agreed to accept payment in installments, as Fobian's installments were paid, was denied by the plaintiff. This issue of fact was submitted to the jury, with an instruction that, if such agreement had been made, then plaintiff could not recover. The jury appears to have found the fact against the defendant, and, for the purposes of this appeal, this finding must be taken as final. That defendant regarded and still regards his contract as one of sale, is very evident. Indeed, it is the only attitude he can take which is at all consistent with the admitted facts.

III. Complaint is made that the trial court erred in permitting the jury to pass upon the question whether the contract between defendant and Fobian was intended as a contract of sale, or as an option to Fobian to make the purchase. The position of the appellant is that the construction or meaning of the contract was for the court alone, and not for the finding of a jury.

3. APPEAL AND ERROR: submitting construction of contract to jury.

It results from our views, as expressed in the first paragraph of this opinion, that, even if this assignment of error be well taken, and if the construction of the contract was for the court, and not for the jury, the error so committed was without prejudice.

Further discussion is unnecessary. There is no sound theory, upon the proved and admitted facts, on which plaintiff can be denied a recovery. The trial court did not err in refusing to direct a verdict for the defendant, nor does prejudicial error otherwise appear in the record. The judgment of the district court is—*Affirmed.*

LADD, GAYNOR, and STEVENS, JJ., concur.