ERNEST A. BURMEISTER, Appellant, v. COUNCIL BLUFFS INVESTMENT COMPANY and B. A. GRONSTAL, Appellees.

No. 43398.

JUNE 19, 1936.

REHEARING DENIED SEPTEMBER 25, 1936.

Capel & Ardell and R. Brown and Reichmann, Garrett & Waldinger, for appellant.

Kimball, Peterson, Smith & Peterson, for appellees.

MITCHELL, J.—Ernest A. Burmeister was the owner of certain farm land located in Pottawattamie county, Iowa. He had borrowed the sum of $17,500 from the Council Bluffs Investment Company and had given as security for said note a mortgage upon the land involved in this controversy. There was default in the terms of the note and mortgage, and foreclosure was commenced. The farm was sold under special execution to the Council Bluffs Investment Company, who, at the end of the redemption period, received a sheriff's deed to the said property. It is the claim of Burmeister that prior to the expiration of the

right of redemption, in July of 1933, he informed the Council Bluffs· Investment Company of his intention to exercise his rights under the moratorium laws in force in this State, to extend the period of redemption until March 1, 1935; that with knowledge of these facts B. A. Gronstal, who was an official of the Council Bluffs Investment Company, proposed that they enter into an agreement in substitution of his statutory rights, and on the 7th day of July, 1933, there was an agreement entered into, which is identified as Exhibit ''A'' and will be hereinafter referred to. After this agreement was entered into the land was rented under a written lease, to Burmeister, first from March 1, 1933, to March 1, 1934, and a second lease was entered into from March 1, 1934, to March 1, 1935. These leases provided for the payment of rental and are in the ordinary form. Burmeister commenced this action, alleging· that Exhibit A was a contract for sale of real estate; that no notice of forfeiture or cancellation had ever been served upon him and that he is entitled to have the forfeiture of his rights under Senate File 59 of the Acts of the 46th General Assembly of Iowa suspended and his equity in the real estate preserved until March 1, 1937; that he comes under the provisions of the Iowa moratorium law and is entitled to the benefits and privileges of said law.

There was a hearing to the court, and the lower court denied the relief sought. Burmeister, being dissatisfied, has appealed to this court.

It is the contention of the appellant that Exhibit A constituted a contract for the purchase of the land and was not simply an option to purchase. Exhibit A is as follows:

''AGREEMENT AND OPTION.

''This agreement and option made and entered into this 7th day of July, 1933, by and between THE COUNCIL BLUFFS INVESTMENT COMPANY, COUNCIL BLUFFS, IOWA, A CORPORATION, first party, and ERNEST A. BURMEISTER, second party, WITNESSETH:

''THAT, WHEREAS, first party above named is the owner of sheriff's certificate covering the property hereinafter described and said first party is to receive sheriff's deed for said property on July 13, 1933 under said certificate and this agreement with reference to option to purchase said property is hereby entered into between the parties under the conditions as herein stated.

"The property involved in this agreement and in said certificate and deed referred to above is the following described property situated in Pottawattamie County, Iowa, to-wit:

"The north fractional half of the southwest quarter (SW ¼) of Section eighteen (18), the east one (1) acre of the southwest (SW) fractional quarter of the southwest quarter (SW¼) of section eighteen (18) and the east half (E½) of the northwest quarter (NW¼) and the northeast quarter (NE¼) of the southwest quarter (SW¼) of Section nineteen (19), all in Township seventy-five (75), Range forty-one (41), west of the 5th P. M., all in Pottawattamie County, Iowa.

"It is hereby agreed between the parties hereto that as to the rental under the lease which second party has made covering said property for the year from March 1, 1933, to March 1, 1934, said rental is to be accepted in lieu of any repairs or interest computation on the amount hereinafter agreed upon up to July 13, 1933.

"It is further agreed between the parties that if prior to February 1, 1935, second party above named will make payment to first party of the sum of $19,500.00 together with interest at 6% per annum from July 13, 1933, then and in that event first party agree to execute and deliver to second party a warranty deed conveying to him the property above described.

"It is further agreed between the parties hereto that under same date herewith the parties hereto are entering into lease covering the property above described from March 1, 1934 to March 1, 1935, and it is agreed between the parties that any rental secured by the first party under said lease shall first be applied toward payment of taxes or any reasonable repairs made or insurance and if there is any rental above said amount and second party above named exercises the option granted him hereunder, then and in that event any such excess shall be credited as against the interest accruing as hereinbefore stated.

"It is further agreed between the parties hereto that if second party does not exercise this option to purchase before February 1, 1935, then this contract and option shall be fully and completely null and void and second party shall have no further rights thereunder and in such event second party agrees to surrender up possession and vacate said premises on or before March 1, 1935.

"(Signed) COUNCIL BLUFFS INSURANCE CO.

"By B. A. Gronstal, V. Pres.
"FIRST PARTY.
"ERNEST A. BURMEISTER
"SECOND PARTY."

This court has on various occasions been confronted with the question of whether a written agreement entered into was an option or a contract for sale.

In Gompert v. Frost, 188 Iowa 1039, at page 1042, 177 N. W. 71, 72, this court said in passing upon this question:

"An option for the purchase of land is a mere privilege or right which the owner confers upon another person to become, at his own election, the purchaser of the property, on stated terms, within a stated period of time. The holder of such an option is in no sense a purchaser. He acquires thereby no right, title, or interest, legal or equitable, in or to the land. He has no right of possession or control. He may, within the time agreed upon, utilize his privilege to buy, tender performance of the terms, and demand a conveyance; but this is a matter of his own choice, and he may permit the option to expire, without incurring any liability therefor to the owner."

In Rampton v. Dobson, 156 Iowa 315, at page 321, 136 N. W. 682, 684, 3 A. L. R. 569, this court said:

"An option of the seller to enforce his contract or to rely upon a penalty for noncompliance is something quite different from an option on the part of the buyer. In the one case there is a sale or valid agreement to sell, and in the other a mere option on the part of the buyer to buy or to enter into a contract of purchase. An 'option' is not an actual or existing contract, but merely a right reserved in a subsisting agreement. It is a continuing offer of a contract, and if the offeree decides to exercise his right to demand the conveyance or other act contemplated, he must signify that fact to the offerer. * * * An option is not a sale. It is not even an agreement for a sale. At best it is but a right of election in the party securing the same to exercise a privilege, and only when that privilege has been exercised by acceptance does it become a contract to sell."

In Rockefeller v. Merritt, (C. C. A.) 76 Fed. 909, at page 915, 35 L. R. A. 633, the federal court said:

"But there can be no binding contract between parties unless their minds meet and assent to the terms of the agreement. * * * One of the most satisfactory tests to ascertain the true meaning of a contract is made by putting ourselves in the place of the contracting parties when it was made, and then considering in view of all the facts and circumstances surrounding them at the time of its execution, what the parties intended by the terms of their agreement. When our intention is thus made clear it must prevail in the interpretation of the instrument regardless of inapt expressions or careless recitals."

In the case of Porter v. Carney, 186 Iowa 424, at page 429, 172 N. W. 644, 646, 647, this court said:

" 'It is the contention of the appellee in this case that the contract in question is nothing more nor less than an agency contract, under the terms of which plaintiff was to receive as his commission all of the selling price over and above the sum of $55 an acre.'

"If that meaning is to be given the agreement, it must be found in the written language; for neither party, plaintiff or defendant, or other witness testifies to any such agreement either before or after the writing was made. Conceding, as counsel argue, that the use of the word 'option' does not alone or of itself control the legal effect of the writing, if, when taken as a whole, it is clear something else was intended; nevertheless, it being a word in common and general use, and being several times repeated in mentioning the character of the instrument, it will be presumed the parties employed the word in its usual and proper meaning, unless the contrary construction is made necessary to avoid nullifying or defeating the intent otherwise expressed in the writing. But the document will be searched in vain for any word or expression which indicates the creation of an agency, or of an employment to find or produce purchasers, or of an undertaking by the defendant to pay commissions on sales made by the plaintiff. * * * The opportunity was for him to improve or decline. He could abandon the venture, and incur no liability to the owner, either in law or in equity. In short, he bought a privilege to make the purchase at his election during the life of the agreement. Moreover, it was a right or privilege to purchase *all* the land, and not *part* of it,—a privilege to purchase, and not the mere privilege to introduce purchasers.

These terms exhibit all the essentials of an option. The defendant was bound to sell upon compliance with the conditions. The plaintiff was under no obligation to buy. Pratt v. Prouty, 104 Iowa 419, 420, 73 N. W. 1035, 65 Am. St. Rep. 472; Myers v. Stone & Son, 128 Iowa 10, 102 N. W. 507, 111 Am. St. Rep. 180, 5 Ann. Cas. 912.''

And at page 433:

''If the court can, by any known rule or canon of construction, change a clearly expressed written option to purchase land at an agreed price and upon given terms into a mere agency to sell, then it may also, by construction, convert an ordinary warranty deed into a lease for a term of years, or a formal promissory note into a contract for work and labor. No court has ever gone to the extent desired by plaintiff in this case, and it is quite inconceivable that such a rule can anywhere find judicial favor.''

Thus we find that one of the essentials of an executory contract of purchase is the obligation on the part of the purchaser to buy, and the seller to sell. Let us turn to Exhibit A to see whether therein we can find any obligation on the part of Burmeister to purchase this land.

The agreement is designated as an ''option''. The word ''option'' is set out several places in Exhibit A. It provides that Burmeister, by the paying of $19,500 together with interest at six per cent from July 13, 1933, on or before February of 1935, is entitled to a warranty deed, conveying to him the property described. Then it provides that in case he does not make the payment as set out in the option, he shall have no further rights. At no place in the agreement is there found any binding obligation on the part of Burmeister to purchase this land. He did not agree to purchase it. He did not agree to pay a certain sum of money within a certain specified time. All that the agreement says is that he has the privilege within the time prescribed, of paying the amount agreed upon and receiving a deed therefor. But he is not obligated to pay that sum of money unless he desires to. It is a mere privilege which was conferred upon Burmeister under the terms of this written agreement, by which he might, at his own election, on the terms stated, within the period of time set out in the agreement, purchase the land.

In addition to this, we have in the case at bar a written lease entered into between Burmeister and the Council Bluffs Investment Company, not one lease but two. It is the claim of the appellant that under the agreement he became personally obligated to pay the costs of repairs, insurance, taxes and interest on the purchase price from the income derived from the operation of the farm. It must be kept in mind that the relationship of landlord and tenant existed between these parties and that appellant was obligated to pay the rental, regardless of whether the option was exercised or not. The only obligation that the appellant had to appellees was to pay the rent provided for in the leases which covered the three-year period. Appellees did provide that in the event appellant exercised the option, then the purchase price was to be computed as of July 13, 1933. The option was given for a two-year period and the only provision was as to the matter of computation. It was agreed that the rental which the appellant had already obligated himself to pay, prior to the execution of Exhibit A, would be understood by the appellees to be in lieu of adding to the purchase price certain items of repairs, taxes and other matters. It was further agreed that the amount which the appellant would have to pay in the event he exercised his option, would be $19,500, with interest from July 13, 1933. It was then provided that in the event he exercised his option on or before February 1, 1935, he would then be given credit on the interest payments for any rental which he had paid. This in no way reduced or eliminated his obligation to pay the rent for the year 1934-1935. Appellees merely said to him that "if and in the event you exercise the option then we will allow the amount which you pay under the lease as rent to be credited on the amount of interest due."

No obligation rested upon the appellant until and unless he exercised the option.

Appellant contends that Exhibit A, known as "Agreement and Option", if originally an option, was converted into a contract of purchase by payments made subsequent to its execution and by acts of the appellees. It is first appellant's claim that he had a substantial equity in the farm, and that this was the original payment upon the option agreement and any payments made subsequently thereto, in whatever form accepted, were necessarily payments made in accordance with the provisions of this agreement and hence indicated an election on the part of the

appellant to purchase and the acceptance of such payments by appellees to be applied as provided in the agreement.

With the contention of appellant we cannot agree. There was not one cent paid by the appellant upon this option, at any time. And the only money which he ever paid to appellees was rent, which was provided for under the written leases entered into. There is no claim of any money having been paid other than the obligation in the leases to pay rent. And the record shows that during some of the years he was unable to pay the full amount of the rent specified and an adjustment was made in regard to the amount, by appellees.

Then again, the appellant is confronted with the fact that on several occasions he entered into written leases for the premises described in Exhibit A. The first lease was for the year ending March 1, 1934; the second for the year ending March 1, 1935; and on February 14, 1935, appellant entered into a third lease of the premises. In doing this appellant recognized that appellees were in fact the title holders of said property; that Exhibit A, the agreement and option, did not entitle him to the possession of the property and he therefore entered into a lease to secure that possession. The acts of the appellant in signing the leases were entirely inconsistent with the claim now made that he executed a contract which would entitle him to possession. Appellant cannot now be heard to claim that he had an equitable title, when he admitted that the title was in appellees, by the signing of the leases.

A situation very similar to that involved in the case at bar is to be found in the case of McKenney & Seabury v. Nelson, 220 Iowa 504, 262 N. W. 101, 103, wherein Justice Parsons, speaking for this court, said at page 508:

"The leases by which the plaintiffs leased the premises to the defendants, one dated to expire March 1, 1933, and one to expire March 1, 1934, are absolutely inconsistent with the theory of the defendants in this case. It is the law that the tenant cannot set up a title in himself to defeat the title of the landlord; that it is against the policy of the law to permit him so to do. 35 C. J., 1224, sec. 565, states:

" 'No rule is better settled by the decisions than the general one that a tenant in undisturbed possession of the demised premises is estopped to deny the title of the landlord, as such title of

the landlord existed in him at the time of the creation or the inception of the tenancy, before a surrender of possession to the landlord.'

"And goes on to point out that this is based upon considerations of public policy. So we have here defendants giving the deed, making a contract prior to giving such deed, and subsequently entering into two different leases between the plaintiffs and defendants, covenanting in the leases to surrender possession at the end of the lease, and the defendants now setting up that all this time they had title and said nothing about it at the time of the inception of the deed, until they concluded somehow or other they might remain. Clearly, the rule works here. This is supported by the Iowa authorities as a general rule. Bowdish v. City of Dubuque, 38 Iowa 341; Stout v. Merrill, 35 Iowa 47; Chambers v. Irish, 132 Iowa 319, 109 N. W. 787; Simons v. Marshall, 3 G. Greene, 502; Burch v. Wickliff, 209 Iowa 582, 227 N. W. 133; 1 R. C. L. p. 747, section 68. So we hold that under the circumstances shown in this case the defendants cannot now come in and claim that the landlord had no title when he leased the land to them; that it was subject to their prior claims. * * *

"Lord Bacon, a famous English philosopher, said centuries ago: 'Reading maketh a full man, speaking maketh a ready man, but writing maketh an exact man.' So, when parties make an agreement and put it in writing, it is that the agreement will be exact and will correctly express the arrangements arrived at. Because of this there originated the parol evidence rule, and all the agreements arrived at are presumed to be embodied in the writings."

In the case at bar the acts of the appellant clearly show his interpretation of the instrument, Exhibit A, to have been an "option" agreement, in which he had no right, title or interest until and unless he exercised the option. Having failed to exercise the option, he had no interest whatsoever.

Appellant contends that due to the fact that appellees failed to give notice of the forfeiture of the agreement, as provided in section 12390 of the Code of Iowa, he is entitled to have his equity in the land preserved until March 1, 1937.

It is conceded that appellee gave no notice of forfeiture. In this contention it seems to us that appellant is a little inconsistent with his previous contention. If this was an executory

contract of purchase, then mere passage of time for performance would not in and of itself work a forfeiture. Any action would be premature until such time as a notice of forfeiture under the provisions of chapter 527 of the Code of Iowa had been served upon appellant. But appellant did not wait until notice of forfeiture was served but commenced this action to secure the extension. If appellant's position is correct, that this is an executory contract, for the purchase of real estate, he had a right to wait until notice of forfeiture was served upon him, and he would then be in a position to commence action, but he did not see fit to do that. This action was commenced without any notice of forfeiture ever having been served, and the only reason that he could have commenced this suit was that he must have believed it was an option agreement which expired for want of exercise of the option. Being an option agreement, it was not necessary for the appellees to serve notice of forfeiture; the option by its very terms expired on the date therein specified unless exercised.

The moratorium act, known as Chapter 117 of the Acts of the 46th General Assembly, Senate File 59, upon which appellant relies in this case, refers only to "all contracts for the sale of real estate, executed prior to January 1, 1934, wherein the vendor has retained legal title, shall be subject to the provisions herein." The act then provides for its application in any cause where any such real estate contract is sought to be foreclosed or forfeited. It further provides for certain things to be done when an action at law or in equity is commenced upon any such contract. The next provision applies only when a notice of forfeiture or cancellation of a real estate contract has been served. Neither of these contingencies had arisen at the time of the commencement of this action. There was no contract for the sale of real estate which was within the contemplation of Chapter 527 of the Code of Iowa or the moratorium act, Chapter 117 of the 46th General Assembly.

It therefore follows that the lower court was right, and judgment and decree of same must be, and it is hereby, affirmed. —Affirmed.

Chief Justice and all Justices concur.