JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant,
v. LE ROY BEHR et al., Appellees.

No. 45256.

DECEMBER 31, 1940.

R. F. Clough and Donnelly, Lynch, Anderson & Lynch, for appellant.

L. R. Boomhower, for appellees.

RICHARDS, C. J.—Plaintiff seeks to avail itself of prior holdings of this court that, though a defendant claims adversely no other title or interest in the plaintiff's real estate than the right to have its use and possession as a tenant, the plaintiff-owner may, in an action to quiet title, compel an adjudication of such

claimed right, as being, if unfounded, a cloud on plaintiff's title. See Equitable Life Ins. Co. v. C. C. Taft Co., 192 Iowa 934, 178 N. W. 880; Davis v. Niemann, 219 Iowa 620, 258 N. W. 761. Though in the argument of defendants it is said that in these authorities the facts differ from those in the instant case, the defendants have not designated nor have we discovered any material-factual distinctions. Viewing the action as properly brought, we go to the basic controversial question, that is, whether defendants' claim of right of possession of the plaintiff's real estate, as tenants during the crop year beginning March 1, 1940, was unfounded.

During the crop year ending March 1, 1940, defendants were occupying and cultivating, as plaintiff's tenants, the premises described in the petition. There was a written lease for that year, referred to as Exhibit A. During several preceding years the same relationship had existed under annual leases. In September 1939 the parties made another written lease, Exhibit B. In terms it created a tenancy for the crop year beginning on March 1, 1940.

Paragraph XII of Exhibit B contains the following: "XII. In the event the first party should sell said farm or any portion thereof, he shall have the right to terminate this lease as of March 1st, following the date of the lease or as of any March 1st during the term of the lease by giving notice of such termination to second party on or before January 15, next preceding the date such termination is to take effect, but in the event second party has under this lease done Fall plowing or sown Fall grain, first party shall in the event of such termination pay to him the actual cost to second party of the seed sown and the value of the labor for Fall plowing which shall be $2.00 per acre for the plowing actually done prior to the receiving of said notice of termination." Standing on these provisions, plaintiff averred that it sold the land in October 1939, and on December 21, 1939, mailed to defendants a notice that such sale had been made, and that plaintiff elected to terminate and cancel the lease, Exhibit B, and that defendants were required to surrender possession on March 1, 1940.

Upon the trial a number of counter-propositions to the alleged terminating of the lease were urged by defendants. One

was that the attempted cancellation and termination on a date later than November 1, 1939, was interdicted by chapter 235, Acts of the Forty-eighth General Assembly, now a part of section 10161, Code, 1939, and in any event was so violative of a matter of public policy declared and established in the act, for the promotion of the general welfare, that a court in which equity is invoked will not reward plaintiff for its such conduct, by quieting its title. But in considering in their sequence the questions presented, we will not come to a discussion of chapter 235. For another thing urged by defendants was that the evidence failed to show that plaintiff sold the premises. And we find ourselves in agreement with the trial court that the plaintiff failed to establish that it had sold the land at the date the notice was given, or on January 15, 1940, within the meaning to be accorded paragraph XII. As to there having been a sale, the showing plaintiff made was that on December 4, 1939, it signed a written acceptance of a so-called offer in writing that had been made by Alvin W. and Richard H. Brown to purchase the premises. Plaintiff affirms that by accepting the so-called offer it sold the land to the Browns. We are unable to agree that plaintiff's position is sound, in view of the following considerations:

For convenience, the writing signed by the Browns we will designate as an offer and the writing signed by plaintiff we will designate as an acceptance, without intending thereby any inference as to the real character or effect of the writing. As stated, plaintiff contends that by accepting the offer plaintiff sold the land, but not in that strict sense attributed to the word "sale" in Eldridge v. Kuehl, 27 Iowa 160. What plaintiff means is that it entered into an executory contract, binding on both parties in such manner that it was the equivalent of a sale, because completion of the transfer of title from the seller to the buyer was a certainty, for, if completion of alienation should not be voluntarily accomplished, it would be done under compulsion of the law, at the instance of either party. And in that connection it may here be noted that in interpreting language in leases, to the effect that lessor may terminate the tenancy in case he should sell the premises, this court has not been inclined to hold that the parties necessarily intended to use the word "sell" in the strict sense of a completed conveying of the title. But it is

equally true that when so used the word "sell" does imply at least a good faith contract for alienation of the premises from the seller to the buyer, and such contract must create an enforceable obligation to convey, and a like one to purchase, binding upon the parties respectively, and enforceable by either against the other. Otherwise the premises have not been sold. Burmeister v. Council Bluffs Inv. Co., 222 Iowa 66, 268 N. W. 188, Luse v. Elliott, 204 Iowa 378, 213 N. W. 410. Whether there was such a contract in the instant case necessitates a further recital of matters appearing in the two writings that constituted such a contract, if there was one.

One of the provisions therein found is that plaintiff will transfer to the Browns a merchantable title. There is also stated a condition that the Browns will make all objections to the validity of the title within 60 days of the date of the contract and not thereafter. Then follows a provision with respect to the undertakings of plaintiff in event of such objections being made. The provision is substantially this. The contract shall be void and the earnest money shall be refunded upon failure of plaintiff to make the title merchantable within 60 days.

It may be conceded that there was a contract of some nature between the Browns and plaintiff. The question is whether, in the light of our prior holdings, it was such a contract that it can be said the land was sold. Viewing the provisions in the writings that have been mentioned, it will be noted that the Browns contracted for a merchantable title. That this was no inconsequential thing for them to require is evident, because plaintiff was not undertaking to convey by general warranty deed. Its only agreement was that a special warranty deed would be given the Browns. Yet, upon the Browns making objection to anything rendering the title unmerchantable, the plaintiff reserved to itself the option to withdraw from all undertakings to sell and convey, and to annul the contract *in toto,* and by refunding whatever had been paid to terminate all interests of the Browns in the land. A person on whom the owner of land confers the right to become its purchaser on stated terms, at the election of such person, is in no sense a purchaser. The land has not been sold. The reason the land has not been sold is that such person may rightfully permit the option to expire, without incurring

any liability to the owner. Gompert v. Frost, 188 Iowa 1039, 177 N. W. 71. Though the conferring of the right or option is contractual, the option or right is not an actual or existing contract, but merely a right reserved in a subsisting agreement. Rampton v. Dobson, 156 Iowa 315, 136 N. W. 682, 3 A. L. R. 569. In the instant case the undertaking of the Browns was a continuing offer to purchase a merchantable title. Their offeree was the plaintiff. And if during the 60-day period given for that purpose, the plaintiff-offeree exercised its right to demand the purchase price, by perfecting the title, it could do so, and by signifying that fact to the Browns would avail itself of any benefits it saw in an acceptance of the Browns' continuing offer. Or plaintiff could exercise its option in the other direction, permitting to expire plaintiff's reserved right to sell the land, without incurring any liability to the Browns. In argument plaintiff concedes that ''If the vendee asserted objections to the title, the vendor might, on failure to make the title merchantable, be relieved from performance.'' To this plaintiff adds ''If the vendee wished to take the title as it was shown by the abstract furnished to the vendee, nothing could stand in the way of the vendee enforcing performance of the contract by the vendor's conveyance.''

The notice to defendants was mailed on December 21, 1939. The latest date for giving the notice, according to Exhibit B, was January 15, 1940. The record shows the existence of nothing on either date more than the offer and acceptance. The time for making any objections to the title was still running. The period within which plaintiff could exercise its optional right to annul the contract or to enforce it in the event the title was not merchantable had not even begun to run so far as appears in the record. So far as is shown what may have occurred to channel the title toward the Browns, or to freeze it in plaintiff, is purely speculation. We are constrained to hold that plaintiff failed to show that on December 21, 1939, or January 15, 1940, it had sold the premises. In the strict sense of the word it is not shown there was a sale. Nor is there any warrant in the record for holding that plaintiff entered into an executory contract that can be deemed a selling of the premises. For the reasons pointed out the contract in question was not a contract that was the equivalent of a sale by reason of its terms assuring with certainty an eventual completed alienation of the property to the intended

buyer. The contract in suit, in that respect, belongs in another category. Plaintiff failed to establish its right to terminate the lease.

The parties have discussed three other paragraphs of the offer made by the Browns. One is (1) "This agreement is made subject to the rights of tenants and occupants, if any, upon said premises or any part thereof." Another is that (2) plaintiff agreed to give possession to the Browns on March 1, 1940, the Browns to compensate plaintiff for any amount plaintiff is obliged to pay the tenant for any fall plowing, not to exceed $2.00 per acre. Another paragraph is to the effect that (3) the Browns are entitled to and shall receive the rents and rental income from the premises for the year 1940 and so long thereafter as the agreement remains in effect. Defendants maintain that the paragraphs numbered above as (1) and (3) expressly reserved to them their possessory rights, and that accordingly the alleged sale could not in any event be considered as within sales of leased premises that warrant extinction of the tenancy. Appellants say that Stewart v. Pier, 58 Iowa 15, 11 N. W. 711, sustains them and is controlling. Plaintiff urges that paragraph (2) nullifies paragraphs (1) and (3) and shows that the actual intent was to place the Browns in physical possession, rather than in possession as landlords, on March 1, 1940. If defendants' contention were sustained it would but add another reason for an affirmance. If plaintiff's view of the paragraphs were approved we are unable to see that anything would be detracted from our conclusion expressed in the preceding portion of the opinion. For an interpreting of these paragraphs nothing seems to call. The decree of the trial court is affirmed.—Affirmed.

SAGER and HALE, JJ., concur.

MILLER and OLIVER, JJ., concur in result.

MILLER, J. (concurring specially)—I agree that the decree should be affirmed but I am not in accord with all of the reasons stated in the foregoing opinion for such affirmance.

The opinion implies that the contract between the plaintiff and the Browns was an option and not a completed contract of sale. In determining whether a particular transaction constitutes an option or a completed contract of sale, many difficult questions of interpretation arise. This is demonstrated by the opinions of this court in the cases of Gompert v. Frost, 188 Iowa 1039, 177 N. W. 71; Rampton v. Dobson, 156 Iowa 315, 136 N. W. 682, 3 A. L. R. 569; In re Assessment of Shields Bros., 134 Iowa 559, 111 N. W. 963, 10 L. R. A., N. S., 1061. I am not prepared to say, under the record herein, that the transaction between the plaintiff and the Browns was a mere option and not a contract of sale. However, I am in accord with the holding that, whatever the transaction may be denominated, it had not yet reached the stage where it could be said to be such a sale as would come within the contemplation of paragraph XII of the lease.

I think that the lease should have the same interpretation that was given in the case of Stewart v. Pier, 58 Iowa 15, 18, 11 N. W. 711, 712; wherein we state:

"Now it is very plain, that the stipulation in regard to the sale of the property, contemplated such a sale or disposition thereof as would terminate the right of defendant and plaintiff to the possession of the property. As long as plaintiff held such right, defendant could occupy the property. Therefore a contract of sale which did not deprive plaintiff of the right of possession, and did not disturb the defendant's right to the occupancy of the property, was not a sale contemplated in the lease."

The defendants' only interest in the real estate was the right to possession during the term of their lease. A contract of sale which did not affect that right of possession would not come within the contemplation of paragraph XII of the lease. The contract provided that the plaintiff was to give the Browns possession of the farm on March 1, 1940. If that provision was strictly enforceable, then the contract came within the contempla-

tion of paragraph XII of the lease. However, as pointed out in the foregoing opinion, there were contingencies that might arise which would render such provision of the contract unenforceable. The contract also provided that it was made subject to the rights of the defendants, as tenants, and that the Browns should be entitled to receive the rents for the year 1940. The contract was subject to possible interpretation by the parties that the defendants be permitted to remain in possession as tenants of the Browns.

It seems to me that, before the plaintiff could prevail in its action to quiet title against the defendants, it was required to prove that its contract with the Browns had proceeded to such a point that the Browns were entitled to possession of the farm to the exclusion of the defendants. I do not think that the proof was sufficient to meet this requirement. For this reason, I am in accord with the holding that the decree appealed from be affirmed.

OLIVER, J., concurs in the foregoing opinion.