396 P.2d 115

Virgil S. WEST and Doris M. West, his wife, Plaintiffs, Cross-Defendants and Respondents,

v.

George J. BRENNER and Bertha Brenner, his wife, Defendants, Cross-Plaintiffs and Appellants.

No. 9265.

Supreme Court of Idaho.

Oct. 27, 1964.

Thomas A. Madden, Lewiston, for appellants.

Morgan & Morgan, Lewiston, for respondents.

KNUDSON, Chief Justice.

Under date of October 1, 1952, appellants, George and Bertha Brenner, as lessees, and respondents, Virgil and Doris West, as lessors, entered into a lease of certain farm lands located in Nez Perce County, Idaho. The lease term was for five years, terminating September 30, 1957, and it provided that the property was subject to sale during the term under circumstances and conditions set out in the paragraphs hereinafter quoted as paragraphs 7 and 8 of the lease.

Under date of December 28, 1956, respondents entered into an agreement with Winston B. Mader and Dorothy A. Mader, his wife (hereinafter referred to as Maders), under which certain lands, including the property covered by said lease, were allegedly sold to the Maders for $135,000.

On December 31, 1956 a written notice, signed by respondents and Maders, was served upon appellants, whereby appellants were notified of the claimed sale, which notice in part stated:

"You are hereby notified as follows:

"FIRST: Said Lessors have sold said lands and property to WINSTON B. MADER and DOR—THY A. MADER, his wife.

"SECOND: Said lease is hereby cancelled as of the close of the calendar year in which this notice is given, to-wit, December 31st, 1956.

"THIRD: Possession of said premises will be taken by the Purchasers on January 1st, 1957.

"FOURTH: The Lessors hereby offer to pay, and hereby tender to you, payments of the following;

"A. The sum of $1000.00, the same being in addition to your share of the crops for 1956.

"B. On acreage leased to you, the Lessors will pay you the fair value of plowing, weeding and seeding done by you. The Lessors hereby state that the fair value and that

which is currently being paid in that community, is as follows:

1) Plowing,  $3.50 per acre.
2) Seeding,  $1.50 per acre.
3) Weeding,  $1.00 per acre, for each time.
4) Seed,  $3.50 per acre."

Appellants refused to surrender possession of the leased premises and caused written notice of their refusal to be given respondents whereby they disputed the validity of the notice, the right to terminate the lease and the prices set forth for the work which had been done.

Thereafter, and by notice dated February 20, 1957, respondents notified appellants in substance that by reason of appellants' refusal to surrender possession Maders refused to carry out their purchase contract dated December 28, 1956, and in order to minimize respondents' losses they were compelled to, and did, contract with Maders that if the said Maders were unable to obtain possession of said premises and crops by March 1, 1957, the purchase price would be reduced as follows:

"The principal amount thereof would be reduced by the sum of $12,000.00.

"The interest to be paid to plaintiffs on the contract between the 28th day of December, 1956, and the 1st day of December, 1957, in the sum of $4,142.09, would be cancelled.

"The interest on the $34,650.00 mortgage accruing to the 1st day of February, 1958, in the sum of $1,559.25, would be paid by the plaintiffs."

On March 12, 1957, respondents filed this action seeking a judgment against appellants for damages and costs in the sum of $18,701.34. On April 20, 1957, appellants filed their application for writ of injunction alleging that respondents had, during April 1957, wrongfully entered upon certain of the lands covered by the lease and commenced the doing of tilling work thereon. An injunction order, restraining respondents from entering upon the leased premises or interfering with appellants' possession thereof, was entered and filed May 23, 1957. Thereafter appellants continued to care for the crops growing upon the leased premises, harvesting them in the fall of 1957, and surrendered possession to Maders of each field as harvest was completed thereon, yielding complete possession by September 30, 1957.

On May 6, 1958, appellants filed their answer to respondents' complaint together with a cross-complaint alleging five separate causes of action for damages. Respondents moved for a dismissal of the first and fifth causes of action and for summary judgment for respondents on the second, third and fourth causes of action alleged in appellants' cross-complaint. The court disposed of said motions by awarding summary judgment to appellants upon the first cause of action in the sum of $1000 and

upon the second cause of action in the sum of $201.73, and by dismissal of the third, fourth and fifth causes of action. Such order was dated and filed March 10, 1960.

Trial was commenced on October 12, 1961 and judgment for respondents entered August 16, 1962. Said judgment was based upon the court's finding that appellants' failure to comply with the notice and demand for possession made by respondents caused respondents damages in the following amounts:

(1) $12,000.00 reduction in selling price to Maders
(2) 4,142.09 interest which respondents would have received under the Mader contract
(3) 1,559.25 interest which respondents were required to pay on the mortgage existing on the premises sold

$17,701.34—Total damages awarded.

This total was reduced by the allowance of the following amounts as credits:

(1) $1,000.00 per judgment on appellants' first cause of action alleged in their cross-complaint
(2) 201.73 per judgment on appellants' second cause of action as alleged in their cross-complaint
(3) 4,980.60 which was received by respondents as lessors' share of the 1957 crops

$6,182.33—Total credit.

On the balance (amounting to $11,519.01) interest at 6% per annum from March 1, 1956 to date of judgment (August 16, 1962) in the amount of $3,744 was allowed, making a total judgment against appellants in the amount of $15,263.01. This appeal is taken from said judgment.

Appellants' assignments of error are primarily concerned with the basic issue of whether the lease was terminated pursuant to the notice served upon the appellants on December 31, 1956. The controlling facts are not in dispute.

The lease provided that the property thereby leased was subject to sale. Respondents contend that the agreement entered into with Maders, dated December 28, 1956, constituted a sale and that the lease was terminated when notice of such sale was given appellants on December 31, 1956. This contention was upheld by the trial court.

Appellants contend that since the subject matter of the claimed sale was the community property of respondents and the agreement of December 28, 1956 was not both signed and acknowledged by them as sellers of the property, the claimed contract of sale was void and unenforceable and therefore no sale occurred on December 28, 1956.

This places in issue the sufficiency of the instrument relied upon by respondents as constituting a sale within the meaning of the lease provisions. The following quoted portion of the lease (hereinafter referred to as paragraph 7) provides that:

"The property herein leased is subject to sale. In the event during the term hereof Lessor sells the property herein leased the Lessee shall, upon notice to him by the Lessor of that fact, complete the caring for and harvesting of crops for that calendar year. The Lessor may assign this Lease to the purchaser of the premises. However, if the purchaser so desires this Lease can be cancelled upon the completion of the harvest in the year in which such notice of sale is given to the Lessee. If the Lease is so cancelled and if the Lessee is unable to negotiate a new lease with the purchaser and if the Lessee will not and does not during the balance of the normal term of this lease have any possession of said premises, then, if under such circumstances such sale is made in the year 1953, the Lessor shall pay the Lessee, in addition to Lessee's share of the crops for that year, the sum of $4,000.00. If, under such circumstances, such sale is made in the year 1954, the Lessor shall pay to the Lessee, in addition to Lessee's share of the crops for that year, the sum of $3,000.00. If, under such circumstances, such sale is made in the year 1955, the Lessor shall pay to the Lessee, in addition to Lessee's share of the crops for that year, the sum of $2,000.00. If, under such circumstances, such sale is made in the year 1956, the Lessor shall pay to the Lessee, in addition to Lessee's share of the crops for that year, the sum of $1,000.00."

It is axiomatic that a lease, like any other contract, is to be construed to give effect to the intention of the parties. Miller v. Belknap, 75 Idaho 46, 266 P.2d 662. It is also generally held that the interpretation of a written instrument derived solely from the language of the writing itself, unaided by extrinsic evidence of the intention of the parties or the surrounding circumstances is a question of law and the interpretation given it by the trial court is not binding upon an appeal. Meyer v. State Board of Equalization, 42 Cal.2d 376, 267 P.2d 257 (1954). In the present case ex-

trinsic evidence offered by appellant was refused by the court.

Here the lease provided that the property leased was subject to sale. The instrument relied upon by respondents as constituting a sale is entitled "Earnest Money Receipt and Agreement," which is a printed form with the property description and other typewritten provisions inserted in the spaces left blank. In the body of this instrument it is repeatedly referred to as an offer and provides that it is not binding "until accepted" by the seller at or before 12 noon on the 31st day of December, 1956. At the bottom of the instrument, following the signatures of Maders, is a provision in printed form stating in substance that the seller accepts the offer set forth above. This acceptance provision is signed by respondents and bears date December 29, 1956. The sale referred to in the notice to appellants dated and served December 31, 1956, was the offer and acceptance above mentioned. This instrument does not contain any acknowledgment on the part of any of the signers.

It is the contention of respondents that a sale as mentioned in the lease would in fact terminate, on the terms stated therein, whatever estate appellants had in the premises involved. There is nothing in the lease to indicate that the parties intended to imply any special or particular meaning to the word "sale" as used therein. The word "sale" does not have a fixed and invariable meaning. It may be given a narrow or broad meaning, depending upon the circumstances and what the parties reasonably intended. Mattingly v. Bohn, 84 Ariz. 369, 329 P.2d 1095 (1958). We cannot say that the parties here involved in using the term "sale" intended to observe the technical distinction between an executed conveyance and a binding contract to convey, and we therefore conclude that the sale recognized by the lease must be either a sale completed by conveyance of title or a valid and enforceable contract of sale made in good faith. The applicable general rule is stated in 51 C.J.S. Landlord and Tenant § 93, page 663, that:

"Under a provision in a lease for its termination on a sale of the premises, the character of sale necessary to render the provision operative depends on a proper construction of the lease as a whole, viewed in the light of the intention of the parties. A completed sale which leaves the lessor with no further claim to or interest in the premises will suffice to terminate the lease, but, unless the contract when properly construed provides otherwise the sale need not have been finally consummated, or the title actually transferred, in order to terminate or permit termination of the lease. Nevertheless the transaction, whether a completed sale or contract to sell, must be in good faith, and the lease is not terminated by a

collusive or colorable sale or contract to sell, and, if a contract of sale is relied on as the basis of termination, it must be such as to create an enforceable obligation to convey, and a like one to purchase. * * * "

In John Hancock Mut. Life Ins. Co. v. Behr, 229 Iowa 900, 295 N.W. 436, the supreme court of Iowa had under consideration a similar question and stated that:

" * * * it may here be noted that in interpreting language in leases, to the effect that lessor may terminate the tenancy in case he should sell the premises, this court has not been inclined to hold that the parties necessarily intended to use the word 'sell' in the strict sense of a completed conveying of the title. But it is equally true that when so used the word 'sell' does imply at least a good-faith contract for alienation of the premises from the seller to the buyer, and such contract must create an enforceable obligation to convey, and a like one to purchase, binding upon the parties respectively, and enforceable by either against the other. Otherwise the premises have not been sold. * * * "

See also: Diamond Cattle Co. v. Clark, 52 Wyo. 265, 74 P.2d 857, 116 A.L.R. 912 (1937); Burmeister v. Council Bluffs Inv. Co., 222 Iowa 66, 268 N.W. 188 (1936);

Middleton Restaurant Ent. v. Tovrea Land & Cattle Co., 89 Ariz. 316, 361 P.2d 930 (1961); Allen v. Marino, 133 Conn. 138, 48 A.2d 564 (1946). This subject is discussed in 35 A.L.R. 534; 116 A.L.R. 934; 163 A.L.R. 1027.

This brings us to the query as to whether the offer and acceptance agreement relied upon by respondents as constituting a sale of the premises involved was in fact binding and enforceable by either party against the other.

I.C. § 32–912 provides that the husband has the management and control of the community property except the earnings of the wife and the rents and profits of her separate estate, and it further provides as follows:

"32–912. * * * But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered: * *."

This court has upon many occasions considered cases wherein the question here presented was dealt with. One of the latest cases is Fuchs v. Lloyd, 80 Idaho 114, 326 P.2d 381, wherein an instrument very similar to the "Earnest Money Receipt and Agreement" we are herein examining was being considered. In that case the trial court held that the instrument was void for lack of acknowledgment of Mrs. Lloyd's

signature, which decision was affirmed. In that case this court stated:

"In Idaho the rule has been long established, and was reiterated in the case of Thomas v. Stevens, 69 Idaho 100, 203 P.2d 597, 599, that the contract must be signed and acknowledged by both husband and wife. In that case this Court said:

" 'It is the long established law of this state that a contract to convey community real property which is not signed and acknowledged by both husband and wife is void. Childs v. Reed, 34 Idaho 450, 202 P. 685; McKinney v. Merritt, 35 Idaho 600, 208 P. 244; Hart v. Turner, 39 Idaho 50, 226 P. 282; Elliott v. Craig, 45 Idaho 15, 260 P. 433 [additional citations].' "

We do not agree with the decisions discussed by respondents wherein it is held that an oral contract with a down payment constitutes a sale within the meaning of a provision authorizing the termination of a lease on the sale of the premises, nor can we, in view of our statute, approve the holding that the element of good faith between vendor and purchasers is of controlling importance.

We think the stipulation in the lease being considered contemplated such a sale as the purchaser could enforce and thereby terminate the right of both landlord and tenant of the possession of the property. If the power of sale was not

properly exercised, the lease did not terminate. If this were not so, the lessor could conceivably be in a position to evict the lessee when no sale to anyone had in fact resulted.

Respondents cite Mitchell v. Atwood, 55 Idaho 772, 47 P.2d 680, in support of their contention that I.C. § 32–912 was enacted for the protection of the community and one dealing with the community may not invoke it to obtain an advantage over the community. We adhere to the decision in said case, however since the appellants herein seek the preservation of their rights to possession under the lease we do not consider that part of the decision to be in point in this case.

Respondents argue that the instrument relied on (Earnest Money Receipt and Agreement) contained all of the essentials of a contract of sale. Whether it contained such claimed provisions is not controlling in this case. However it is deserving of note that said instrument contains language which strongly indicates that the parties considered this instrument to be a part of the preliminary negotiations with the understanding that another contract by which they were to be governed in this transaction would be drawn and escrowed. The language we refer to is contained in the typewritten portion of said instrument wherein the payments of the purchase price are mentioned and provides:

"$90,350.00 by contract to be drawn at [and] escrowed at the sellers' bank in

Lewiston, Idaho which will provide for required payments etc. as follows:"

The record discloses that respondents and Maders did in fact execute and acknowledge an "Escrow Contract" relative to the purchase and sale here involved, which contract bears date February 28, 1957, wherein it is provided:

"WHEREAS, the parties hereto on the 28th day of December, 1956, entered into an Earnest Money Receipt and Agreement providing for the sale hereinafter set forth, and therein provided that an Escrow Contract should be drawn and escrowed at Vendors' bank, NOW THEREFORE, THIS AGREEMENT WITNESSETH:"

A comparison of the Earnest Money Receipt and Agreement dated December 28, 1956, and the Escrow Contract dated February 28, 1957 makes it clear that many important terms were not agreed upon until the latter date.

The contract here in question was not enforceable either by or against respondents and the defect may not be cured by a subsequent offer by respondents to acknowledge the instrument.

"The element of mutuality in such a case must exist from the inception of the contract, without reference to the subsequent ability or willingness of one of the parties to perform." Childs v. Reed, 34 Idaho 450, 202 P. 685; Elliott v. Craig, 45 Idaho 15, 260 P. 433; Burnham v. Henderson, 47 Idaho 687, 278 P. 221; Thomas v. Stevens, 69 Idaho 100, 203 P.2d 597.

Respondents contend that the notice dated and served upon appellants on December 21, 1956, terminated appellants' right of possession of the premises involved. Such contention is predicated upon the assumption that the "Earnest Money Receipt and Agreement" constituted a sale. The language of the lease is susceptible of no other reasonable interpretation than that the notice to the lessee of the fact that the lessor has sold the property, must be given after the sale has taken place. Although the escrow contract of February 28, 1957 constituted a valid and enforceable sale, the notice referred to was given approximately two months prior to the existence of such contract. Since no sale, as contemplated by the lease, had taken place at or before the giving of said notice, it did not satisfy the requirements of the lease and was ineffective to accomplish the result contended for by respondents.

The parties disagree regarding the interpretation to be placed upon the following quoted paragraph of the lease (hereinafter referred to as paragraph 8), to-wit:

"Upon the termination of this Lease, whether at the end thereof or from whatsoever cause, the Lessee shall, if crops have not been planted, vacate said

premises forthwith. If crops have been planted, then Lessee shall complete the harvesting of such crops and as each field is harvested possession thereof shall be surrendered to the Lessor. At that time the Lessor shall pay the Lessee the going rate for summerfallowing or seeding which has theretofore been do*en*. Possession of the summerfallow or seeded land shall be delivered immediately upon payment to Lessee therefor."

Respondents claim that this quoted language does not apply to termination on a sale of the premises and assert that the rights of the parties on a sale are governed exclusively by paragraph 7 of the lease which immediately precedes this last quoted paragraph.

Appellants contend that so to construe the instrument would not be giving the words "or from whatsoever cause" their usual and ordinary meaning; that if it were the intention that such clause would have a restricted meaning, it would have been easy to have inserted the words "except on sale" immediately following the words "whatsoever cause." Webster's New International Dictionary, Second Edition, defines "whatever" as meaning "of any kind so ever that it may be" and "whatsoever" as being "a more formal or intensive form of 'whatever.'"

Appellants point out that said paragraph 7 of the lease contains no provision that the tenant shall surrender possession of any crops growing on the land at the time of sale or notice of sale; that the only provision it makes with reference to growing crops is that, on notice of sale, lessee shall "complete the caring for and harvesting of crops for that calendar year"; that said paragraph makes no provision for the transfer of title or possession of crops growing upon the premises at that time nor for payment to the tenant for any such crops.

In this connection we find what appears to be some inconsistency in respondents' position. They steadfastly argue that said paragraph 8 has no application to termination of the lease by sale; that no reference to a sale, or its effects, or the rights of the parties in the event of a sale, is found in any part of this lease except the one paragraph dealing with sale. They identify the sale clause as being one paragraph consisting of about 23 lines found on pages 2 and 3 of the lease, which paragraph we have quoted herein as paragraph 7 thereof. Notwithstanding respondents' said contention, they included in their notice to appellants, dated December 31, 1956, an offer and tender of payment for the plowing, seeding, weeding and seed in compliance with a provision in the last above quoted paragraph (8), directing that "at that time (referring to the termination of the lease from whatsoever

cause) the lessor shall pay to the lessee the going rate for summerfallowing or seeding which has theretofore been done." Paragraph 7 contains no provision requiring or referring to such tendered payments. The offer and tender contained in the said notice is quite convincing that respondents recognized an obligation which was specified only in paragraph 8 as binding upon them in the event of a sale.

■ We recognize that the primary object of construction of a contract is to discover the intention of the parties and in order to effectuate that objective the contract must be construed as a whole and considered in its entirety.

We must assume that the parties had some practical purpose in mind when they inserted paragraph 8 in the lease and we are unable to give it the limited construction contended for by respondents. The language used therein convinces us that in the event of a sale of the premises involved the lessee would be entitled, if not obligated, to harvest any crops which had been planted at the time notice of sale was given.

■ We conclude that the contract dated December 28, 1956 did not constitute a sale within the meaning of the lease here involved. We also conclude that the provisions of said paragraph 8 were intended to be and are applicable to a termination of the lease by sale of the premises.

■ The burden of proving that the relation of landlord and tenant had been terminated pursuant to the provisions of the lease rested with respondents who asserted that fact. It is clear that respondents did not prove the claimed termination. Therefore, under the terms of the lease appellants were at no time required to relinquish possession of the premises until the expiration of the full term ending September 30, 1957. There is no contention that respondents did not surrender possession in conformity with the provisions of the lease governing the manner of surrender upon expiration of the term.

The record discloses that under a summary judgment entered March 10, 1960, appellants were awarded the amount of $201.73 as damages resulting to appellants as alleged in the second cause of action of their cross-complaint. No error is assigned to the action of the court in awarding such judgment.

■ Appellants assign error to the action of the trial court in dismissing the fifth cause of action stated in appellants' cross-complaint wherein it is alleged that appellants sustained damages resulting from respondents' willful acts of trespass upon the leased premises. The applicable general rule is stated in 51 C.J.S. Landlord and Tenant § 352, page 1043, as follows: "The lessor is answerable in damages to his lessee

for injuries to the premises which prevent his use or occupation, or diminish the value thereof for the purposes of the lease, where such injuries arise from the culpable negligence or deliberate act of the lessor or from his co-operation with others in producing such injuries." Bancroft v. Godwin, 41 Wash. 253, 83 P. 189 (1905); Frepons v. Grostein, 12 Idaho 671, 87 P. 1004; Farr v. Wasatch Chemical Co., 105 Utah 272, 143 P.2d 281, 151 A.L.R. 275 (1943); Kelly v. Easton, 35 Idaho 340, 207 P. 129, 26 A.L.R. 1042.

Since the lease was not terminated pursuant to its provisions, the appellants had the right of possession and may properly maintain an action for damages to the leasehold caused by respondents and it was error to strike said cause of action. In general the measure of damages in such case is based on the diminution in value of the lease of the premises for the purpose for which they were used. 51 C.J.S. Landlord and Tenant § 320 pp. 998–999. Inasmuch as it appears clear from the record before us that the respondents entered the leased premises believing that they had a right to possession thereof rather than to harass appellants or wantonly or maliciously interfere with their rights, no punitive damages should be allowed.

Other errors are assigned but our decision upon the vital issues herein considered renders a discussion of them unnecessary.

The judgment is reversed and the cause remanded with instructions to enter judgment in favor of appellants and against respondents in the amount of $201.73 as damages allowed under the second cause of action of appellants' cross-complaint, and to afford appellants a trial under the fifth cause of action stated in appellants' cross-complaint and enter judgment in favor of appellants for such damages, if any, as may be established thereunder. Costs to appellants.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.