THE TRAVELERS INSURANCE COMPANY V. DESMOND GIBSON.

No. 7367.  Decided July 19, 1939.
(130 S. W., 2d Series, 1026.)

*Renfro & Kilgore* and *C. C. Renfro,* all of Dallas, for plaintiff in error.

The Court of Civil Appeals erred in holding there was sufficient evidence to raise the issue of acceptance of the rental contract by the State manager of the insurance company. There was no evidence that said manager ever intended to accept the contract or that he kept it with any intention of giving effect to it. Ormsby v. Tarcliffe, 117 Texas 242, 1 S. W. (2d) 1084; Cain v. Dickson, 78 S. W. (2d) 1095; Beckner v. Barrett, 81 S. W. (2d) 719.

*L. W. Shepperd,* of Groesbeck, for defendant in error.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This is an action of trespass to try title instituted on January 3, 1936, by the plaintiff in error, Travelers Insurance Company, against the defendant in error, Desmond Gibson, for the recovery of a certain tract of land—constituting a farm —in Limestone County. On January 25, 1936, the Insurance Company caused a writ of sequestration to be issued and placed in the hands of the constable for execution. Levy of the writ was not made for the reason that Gibson surrendered possession of the farm. In his answer to the suit of trespass to try title, Gibson pleaded not guilty and set up a cross action for damages on account of being dispossessed of the farm. Since no question arises in respect to the pleadings in the case, it is unnecessary to notice them any further. The case was tried in April, 1936, before a jury, resulting in a judgment to the effect that the Insurance Company take nothing, and that Gibson recover damages in the sum of $677.70 for

being wrongfully dispossessed of the farm. The Company appealed and the Court of Civil Appeals reversed the judgment of the trial court in the respect that a recovery by the Company of title to the land was denied, and rendered judgment in this respect for the Company. In all other respects the judgment of the trial court was affirmed. 110 S. W. (2d) 241. The Insurance Company has been granted the writ of error.

During the year 1935, Gibson had possession of the farm as tenant of the Insurance Company. The lease term provided in the lease contract for that year began January 1, 1935, and ended December 31 of that year. Gibson claims that he was entitled to possession of the farm during the year 1936, under the term of a written instrument bearing date October 16, 1935, which he claims both he and the Insurance Company agreed to. Gibson signed said written instrument on the last mentioned date but the Insurance Company did not ever sign the instrument or take any affirmative action in respect to it. According to the terms of this instrument, which we shall denominate the lease contract for the year 1936, the farm was leased to Gibson by the Insurance Company for the year 1936. The instrument contains the following provision, which, so far as need be set out here, reads as follows:

"It is further understood and agreed by and between the parties hereto that in case of sale of said premises prior to December 1, 1935, then this lease shall not take effect but shall be null and void. * * *"

The Company contends, first, that there is no evidence of sufficient probative force to show that the Company ever consented to be bound by the terms of said instrument, and secondly, in the alternative, that the evidence shows conclusively that the farm was sold by the Company prior to December 1, 1935, and therefore the lease purported by said instrument became ineffective by virtue of the provision set out above. These respective contentions of the Company present the only question which we are called on to decide. In view of the conclusion we reach in respect to the second contention of the Insurance Company, it is needless to examine the first. In other words, we shall assume as a fact that both Gibson and the Company agreed, on or about October 16, 1935, to be bound by the terms of the lease instrument of that date, and shall proceed to consider whether or not the evidence conclusively shows that the lease purported by the terms of said instrument became ineffective because of the sale of the farm to H. P. Hickman as hereinafter described. The undisputed evi-

dence shows the following facts: L. R. Price, Jr., was a ministerial agent of the Company, without any authority to make any contract in behalf of the Company. On October 28, 1935, he found a purchaser for said farm in the person of H. P. Hickman, and on said date Hickman signed a written contract for the purchase of said farm upon terms specified in the instrument. The instrument was duly forwarded to the home office of the Company for rejection or approval. On November 11, 1935, the Company duly accepted the contract proposed by Hickman, duly signed the instrument, and same became effective on that date as a binding contract between the parties. According to the terms of the instrument Hickman was to pay $6960 for the farm. One Thousand Dollars of this sum was to be paid in cash and for the balance Hickman was to execute vendor's lien notes as specified in the instrument. It was provided in the instrument that "This contract shall be closed on or before December 1, 1935." It was also provided: "The seller shall deliver possession of this farm Jan. 1st, 1936." On November 26, 1935, the Company duly signed and acknowledged a special warranty deed purporting the conveyance of said farm to Hickman. This deed was not delivered to Hickman until January 30, 1936, at which time he was put in possession of the farm and the cash consideration called for by the contract of sale was paid and the purchase money notes executed. Several weeks before December 1, 1935, Price informed Gibson that Hickman had made an offer to buy the farm and that the offer had been forwarded to the Company. He told Gibson the price which Hickman offered. This was all the information concerning said sale which Gibson received prior to December 1, 1935. On Sunday, December 1, 1935, Gibson wrote and mailed to Price, at Waco, a post card which reads as follows:

"Thornton, Texas.
"12-1-35

"Dear Sir:

"This is the 1st of Dec. and the place is not sold and I am going to start plowing. Will you please have the contract for 1936 I signed sent to me. I never did get any copy.

"Yours truly
"Desmond Gibson."

When Price received this post card, he immediately got in communication with D. C. Fitch, who was a general agent of the Company and whose office was in Dallas. On December 2,

1935, Fitch wrote and mailed a letter addressed to Gibson at Thornton, Texas. The body of this letter reads as follows:

"Dear Sir:

"Our Mr. Price tells us that he has informed you that the Conner farm has been sold and that we will want possession on January 1st at the expiration of your lease and that you state you do not intend to move.

"We are very much surprised at this because Mr. Price has previously informed you that the place was being sold and has given you every opportunity to look around for another farm.

"The purpose of this letter is to give you formal notice that we will want possession on January 1st, 1936, and will expect that you will be prepared to deliver it promptly on that date."

This letter was received by Gibson in due course of mail. Gibson testified that he had a conversation with Price on Monday morning, December 2, 1935. In respect to this conversation Gibson testified as follows: "I had been to Groesbeck and I met him between here (Groesbeck) and Thornton, and I got out of the car and I said: 'well, did you get my card?' and he said 'yes,' and I said: 'Is the place sold?' and he said 'yes,' and I said: 'When did it sell?,' and he said: 'I got word this morning from the home office that they were going to accept Mr. Hickman's proposition.' "

On December 5, 1935, the Insurance Company and Hickman made and entered into a written agreement, in respect to said farm, which reads as follows:

"State of Texas
"County of Dallas.

"This memorandum supplements the Sale Contract dated October 28, 1935, between The Travelers Insurance Company and H. P. Hickman, concerning the sale of the above Real Estate. Said Real Estate is now in possession of Desmond Gibson, who was a tenant for The Travelers Insurance Company, for the year 1935. It is apparent that there may be some difficulty in securing possession from the tenant by January 1, 1936. It is understood and agreed that the undersigned, H. P. Hickman, does not wish to be involved in any litigation with reference to said property and The Travelers Insurance Company agrees to exercise due diligence to obtain possession of the property for delivery to Mr. Hickman as soon after January 1, 1936, as possible. If The Travelers Insurance Company is unable to deliver possession of said prop-

erty on or before January 31, 1936, it is agreed that the said H. P. Hickman may at that time upon written notice to The Travelers Insurance Company rescind the Sales Contract and the earnest money deposited with the Sales Contract will be returned to the said H. P. Hickman in settlement of any rights which either The Travelers Insurance Company or H. P. Hickman might have by virtue of said contract. Interest upon the notes executed by H. P. Hickman upon the consummation of the sale shall be payable only from the date possession is delivered or tendered to him.

H. P. Hickman

THE TRAVELERS INSURANCE COMPANY

By D. C. Fitch."

The only dispute, respecting the branch of the controversy we have under consideration, relates to the meaning of the term "sale" as used in the clause of the lease contract for 1936, regarding the sale of the farm prior to December 1, 1935. The precise point in dispute is whether the binding contract of sale which was made between the Insurance Company and Hickman prior to the last mentioned date falls within the meaning of the term "sale" as used in said clause. Viewing the said lease contract in the light of the attending circumstances, we see no reason to say that in using said term "sale" therein as they did, the parties observed the technical distinction between an executed conveyance and a binding contract to convey. The specific subject which the parties were dealing with was the possession of the farm during the year 1936. The time of passage of title under said "sale" was not the thing in respect to which the parties were contracting. It is fairly certain that by the term "sale" the contracting parties meant a binding sale contract made before December 1935, which, regardless of its technical legal character in respect to being executed or executory, would invest the purchaser with the right to demand possession of the farm at the expiration of Gibson's lease for the year 1935. Manifestly this last mentioned result was what the parties had in contemplation in making the stipulation in question. It is not reasonable to suppose that they cared whether this result was accomplished by means of a deed conveying the farm to the purchaser subject to Gibson's lease for the year 1935, or by means of a contract to convey which bound the Company to put the purchaser in possession at the expiration of the last mentioned lease. We conclude, therefore, that the executory contract for the conveyance of the farm, which the Insurance

Company made with Hickman prior to December 1, 1935, and which was subsequently carried out in essential respects, had effect to render ineffective the lease contract between the Company and Gibson for the year 1936.

The judgment of the Court of Civil Appeals, in the respect that same is in favor of the Insurance Company, is affirmed. In all other respects the judgment of said court and that of the trial court are reversed and judgment is here rendered for the Insurance Company.

Opinion adopted by the Supreme Court July 19, 1939.