361 P.2d 930

**MIDDLETON RESTAURANT ENTERPRISES, a corporation, Appellant,**

v.

**TOVREA LAND AND CATTLE COMPANY, a corporation, et al., Appellees.**

No. 7063.

Supreme Court of Arizona.

May 17, 1961.

Otto H. Linsenmeyer, and Marshall W. Haislip, Phoenix, and Max L. Bernbaum, Beverly Hills, Cal., for appellant.

Fennemore, Craig, Allen & McClennen, and Evans, Kitchel & Jenckes, Phoenix, for appellees.

BERNSTEIN, Vice Chief Justice.

This is an action seeking a declaratory judgment to have certain rights of the parties under a lease declared and established by the court pursuant to A.R.S. § 12–1831 et seq.

Tovrea Land and Cattle Company was the owner of real estate and improvements consisting of approximately seventy-six acres including the Stockyards Administration Building and Restaurant and Bar at 5001 East Washington Street, Phoenix, Arizona. On August 26, 1958, Tovrea Land and Cattle Company entered into a lease with Middleton Restaurant Enterprises covering the portion of the Stockyards Administration Building occupied by the Stockyards Restaurant and Bar, for a period of five years commencing October 1, 1958.

On December 1, 1958, Tovrea Land and Cattle Company sold certain real and personal property to P. E. Tovrea and Helen Green Tovrea, stockholders in the Tovrea Land and Cattle Company, which sale included the said administration building. Thereafter, P. E. Tovrea and Helen Green Tovrea sold the property to F. A. Sitton and others as evidenced by the Outline of Escrow Instructions and Escrow Instructions entered into by the parties on February 2 and 9, 1959, respectively, and the recording of the deed by F. A. Sitton on March 5, 1959. On February 23, 1959, P. E. Tovrea and Helen Green Tovrea executed and signed the deed before a notary public and delivered it into escrow and sent the following notice to Middleton Restaurant Enterprises, which notice was duly served on the same day:

"Notice of Cancellation

"To: Middleton Restaurant Enterprises
5001 East Washington Boulevard
Phoenix, Arizona

"You are hereby notified, under the provisions of paragraphs 15 and 17 thereof, that the undersigned hereby cancels the Lease dated August 26, 1958, by and between Tovrea Land and Cattle Company, the Lessor therein, and Middleton Restaurant Enterprises, the Lessee therein, such cancellation to be effective March 1, 1960.

"The Administration Building, of which the leased premises are a part, together with the furniture, fixtures, and equipment owned by the Lessor and used by you in connection with the bar and restaurant operated by you, was sold on December 1, 1958, to P. E. Tovrea and Helen Green Tovrea, and now is being sold by P. E. Tovrea and Helen Green Tovrea, his wife, to F. A. Sitton and Hazel Sitton, Lela S. Hancock, Virginia L. Hancock, Helen S. Vetter, Donna D. Sutton, and Max L. Sitton."

Upon receipt of the above notice, Middleton Restaurant Enterprises protested in writing to the lessor and its successors in interest that it objected to the sufficiency of the notice of cancellation and thereafter

brought this action in the trial court. The trial court entered Summary Judgment on January 11, 1960, adjudging that the notice of cancellation was in compliance with the cancellation provision in the lease and by reason thereof the effective date of cancellation of the lease was March 1, 1960. The trial court also decreed that under the lease Middleton Restaurant Enterprises was responsible to the City of Phoenix for the payment of moneys for liquor tax permit and the liquor tax levied by said city. This appeal followed:

Middleton Restaurant Enterprises contend that the lessor had no right to cancel the lease until it had completely consummated a sale and conveyed the premises. They also contend that the notice of cancellation was defective and void in that it did not indicate an unequivocal acceptance of the option contained in the cancellation clause; and because of a failure to make a tender of money at the time of the giving of the notice of cancellation. The lease, in the part material on this appeal, provided:

"15. *Cancellation.* Lessor may sell the Administration Building of which the leased premises are a part at any time during the entire term of this Lease, and in the event of such sale prior to September 30, 1962, Lessor reserves the right to cancel this Lease by giving Lessee notice in writing not less than one (1) year prior to the effective date specified in said notice for such cancellation. If such cancellation occurs during the calendar year 1959, a penalty shall be paid by Lessor to Lessee of Ten Thousand Dollars ($10,000.00). If the effective date of cancellation is after 1959 the amount of such penalty shall be reduced by Two Thousand Dollars ($2,000.00) for each year of the term of this Lease which has elapsed prior to the effective date of cancellation, fraction of a year in proportion. In the event of such cancellation, Lessor shall return to Lessee the unused portion of any advanced rent paid by Lessee. In the event of such cancellation Lessor shall purchase from Lessee the inventory of food and supplies and the inventory of loose equipment owned by Lessee and on hand for use in the conduct of the business on the leased premises at the effective date of cancellation, the purchase price to be paid by Lessor to Lessee for the same to be at Lessee's book cost, less reasonable depreciation in accordance with good accounting practices.

"It is understood and agreed that this cancellation privilege is only available upon the sale of the Administration Building by the Lessor or upon the succeeding sale of said building by the purchaser from the Lessor, but in the latter event only if the majority inter-

est in said purchaser from Lessor is composed of one or more stockholders of Lessor."

Middleton Restaurant Enterprises has raised eight assignments of error. No argument or authority is presented in support of assignments of error 1 and 4 and, therefore they are considered abandoned. Brockmueller v. State, 86 Ariz. 82, 340 P.2d 992, certiorari denied 361 U.S. 913, 80 S.Ct. 258, 4 L.Ed.2d 184. The remaining assignments of error present essentially three issues for our determination. The first is whether the right to give the notice of cancellation accrued upon entering into an agreement with the purchaser for the sale of the premises, or accrued only upon the complete consummation of the sale by the delivery and recording of the conveyance of the title. Middleton Restaurant Enterprises contend that the notice of cancellation was premature by its own terms when it stated that the property "now is being sold", since the lease provided that the right to cancellation was only reserved "in the event of * * * sale".

The lease makes the right to cancel solely dependent upon the making of a sale up to September 30, 1962. In Mattingly v. Bohn, 84 Ariz. 369, 329 P.2d 1095, 1096, this court stated:

"* * * It is not always necessary to constitute a sale that a conveyance must be made or the title pass. Eaton v. Richeri, 83 Cal. 185, 23 P. 286. The word sale has not a fixed and invariable meaning. It may be given a narrow or broad meaning depending upon the circumstances and what the parties reasonably intend." (citing cases)

Viewing the lease in the light of the attending circumstances, we cannot say that the parties in using the term "sale" intended to observe the technical distinction between an executed conveyance and a binding contract to convey.

The parties were not contracting as to the time of the passage of the title, but rather meant a binding contract which would invest the purchaser with possession at the end of the year's notification of cancellation, in this case March 1, 1960. If it were otherwise and the notice of cancellation had to be given when the conveyance was recorded, the right of cancellation would not be available at the time of the sale but only upon the expiration of one year thereafter. The purpose of the cancellation provision in the lease was to allow a purchaser to obtain possession and no technical distinction between an executory contract of sale and an executed deed of conveyance was intended. Travelers Ins. Co. v. Gibson, 133 Tex. 534, 130 S.W.2d 1026; Mattingly v. Bohn, supra. We therefore hold that under the lease, an executory contract to sell entered into before September 30, 1962, was a sale

giving the Tovreas the right to give the notice of cancellation.

There is no dispute that P. E. Tovrea and Helen Green Tovrea entered into an enforceable escrow agreement with the purchaser F. A. Sitton, et al., on February 9, 1959. A binding contract to sell was thus entered into giving rise to the right to give a notice of cancellation. In Young v. Bishop, 88 Ariz. 140, 353 P.2d 1017, 1021, this court stated:

"* * * A binding contract of sale must exist with respect to the subject-matter of the escrow instrument to support an enforceable escrow, (citing cases). A good definition of the generic term 'escrow' is this: an escrow is a written instrument which by its terms imports a legal obligation, and which is deposited with a third party, to be kept by the depository until the performance of the prescribed condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee. (citing cases). In short, an escrow primarily is a conveyancing device designed to carry out the terms of a binding contract of sale previously entered into by the parties."

The second issue is whether tender of the payments for penalty and purchase of lessee's inventory called for in the lease in the event of cancellation thereof was a condition precedent to a valid notice of cancellation. Upon a reading of the cancellation clause in the lease we find that the only conditions stated therein for the giving of a notice of cancellation were: (1) the notice must be in writing, (2) it must state that the lease is cancelled, and (3) must set forth the effective date of cancellation not less than one year from the date of the notice. The notice in question was in writing, it conveyed the message that the lease was cancelled, it specified March 1, 1960, as the effective date of cancellation, and it was given on February 23, 1959, more than one year prior to the effective date. It therefore met the requirements of the lease.

The cancellation of the lease was not by the lease made to depend on the lessor paying a certain penalty and to buy the lessee's inventory but only upon a sale of the leased premises. The agreement in the lease to pay a penalty as damages and to buy the inventory was the lessor's obligation. The lease specifically renders the payment of the penalty, the return of unearned rent and purchase of the lessee's inventory due on the effective date of cancellation and not at the time of notice of cancellation. The terms of the lease in reference to the above payments state that the lessor is to pay "if such cancellation occurs" and "in the event of such cancellation." If the parties had intended the payments to be at the time of the notice they could have provided

**322**

for it in the lease. In this instance the parties made the actual date of cancellation the time when the lessor was to pay the lessee for the cancellation of the lease. The payments are not a condition precedent to the cancelling of the lease, Pullin v. Parrish Farms, Inc., Tex.Civ.App.1959, 322 S. W.2d 319. We therefore hold that the notice of cancellation was in all respects in compliance with the provisions for giving notice of cancellation contained in the lease.

The last issue presented is whether Middleton Restaurant Enterprises is responsible under the terms of the lease to pay the liquor license taxes to the City of Phoenix. The lease provides, in relation to the liquor licenses:

> "4. *Conduct of Business.* During the term of this lease lessee shall * * * (g) maintain all licenses except for liquor licenses, necessary or required for the conduct of said business and pay all fees accruing on account thereof."

The above provision leaves no doubt that the parties intended that the lessor was to be responsible for the fees payable on the liquor licenses. Provision four expressly excepts liquor licenses from the licenses the lessee was to pay the fees accruing on account thereof. The fact that the City of Phoenix calls it a tax does not change it from being a fee accruing on account of the license.

The judgment of the trial court is modified to render the lessor under the lease responsible for payment to the City of Phoenix of moneys for liquor tax permit and the liquor tax levied by the City of Phoenix. The judgment of the trial court as modified is affirmed.

STRUCKMEYER, C. J., and UDALL, JENNINGS and LOCKWOOD, JJ., concur.